1  WHATLEY DRAKE & KALLAS, LLC
   Joe R. Whatley, Esq.
2  jwhatley@wdklaw.com
   1540 Broadway, 37th Floor
3  New York, NY 10036
   Tel: (212) 447-7070
4  Fax: (212) 447-7077

5  ROSNER & MANSFIELD, LLP
   Alan M. Mansfield, Esq. (SBN: 125998)
6  alan@rosnerandmansfield.com
   10085 Carroll Canyon Road, Suite 100
7  San Diego, CA 92131
   Tel: (858) 348-1005
8  Fax: (858) 348-1150

9  Attorneys for Plaintiff

10 [Additional Counsel Appear on Signature Page]

11            **UNITED STATES DISTRICT COURT**

12   **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

13 IATSE LOCAL 33 SECTION 401(k)          Case No.: **CV08-03949 AHM**
   PLAN BOARD OF TRUSTEES,
14                                         **(SSx)**
                                           COMPLAINT FOR VIOLATION
15           Plaintiff,                    OF EMPLOYEE RETIREMENT
                                           INCOME SECURITY ACT AND
16      v.                                 CALIFORNIA BUSINESS AND
                                           PROFESSIONS CODE §17200, *et*
17 MICHAEL L. BULLOCK,                     *seq.*
   individually and doing business as
18 INNOVATIVE EMPLOYEE                     **DEMAND FOR JURY TRIAL**
   BENEFITS PROGRAMS;
19 SECURITIES AMERICA, INC.;
   MASSACHUSETTS FINANCIAL
20 SERVICES COMPANY,

21           Defendants.

22

23

24     Plaintiff, Board of Trustees of the IATSE Local 33 Section 401(k) Plan (the

25 "Plan"), by and through its counsel, allege the following based upon information

26 and belief, except as otherwise identified herein as being based on the personal

27 knowledge of Plaintiff. The investigation that supports these allegations included a

28 review of United States Securities and Exchange Commission ("SEC") filings,

                                    1
   COMPLAINT

filings with the Financial Industry Regulatory Authority ("FINRA"), and other regulatory filings, reports, advisories, press releases, media reports, and communications regarding the Defendants. Plaintiff believes that the factual contentions contained herein, except as identified herein as being based on the personal knowledge of Plaintiff, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

## INTRODUCTION

1. Plaintiff brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), § 502(a)(2), (3); 29 U.S.C. § 1132(a)(2), (3), for relief on behalf of the IATSE Local 33 Section 401(k) Plan, a defined contribution and individual account plan operated and established by the Board of Trustees, and all participants and beneficiaries thereof.

2. The Defendants are entities and persons who are parties in interest to the Plan, who were acting in a fiduciary capacity, or who assumed or owed a fiduciary role in relation to the Plan.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. §1132(e)(1).

4. This Court has personal jurisdiction over defendants and venue is appropriate in this District pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because at least one defendant resides in or may be found in this District. The Plan is administered in this District and some or all of the actionable conduct for which relief is sought occurred in this District. Defendants systematically and continuously have done and continue to do business in this District, and the case arises out of Defendants' acts within this District.

## THE PARTIES

5. On personal knowledge, Plaintiff, the IATSE Local 33 Section 401(k) Plan Board of Trustees ("Trustees"), are the representatives and plan sponsor of the

2

IATSE Local 33 Section 401(k) Plan. They are appointed pursuant to an Agreement and Declaration of Trust and in that capacity have the authority to take actions, seek recovery of money and Plan assets, and bring suit on behalf and for the benefit of the Plan and its participants and beneficiaries.

6. On personal knowledge, the IATSE Local 33 Section 401(k) Plan is an employee benefit pension plan designed to be qualified pursuant to Section 401(a) of the Internal Revenue Code. The Plan is an individual account plan and is of the form typically referred to as a "401(k)" Plan. The Plan is a multi-employer plan.

7. Defendant Michael L. Bullock ("Bullock") is a party in interest and fiduciary with respect to the Plan. Plaintiff alleges that Innovative Employee Benefit Programs ("Innovative") is a sole proprietorship operated by Bullock. Bullock was the primary entity providing investment advice and investment consultation to the Plan. Bullock was hired by the Plan to provide objective, unbiased investment advice; to assist the Trustees in complying with their fiduciary responsibilities to make certain that the Plan was operated in the best interests of Plan participants; and to ensure that investment options offered were reasonable and prudent for Plan participants. Bullock received fees for his investment advice. Bullock had and exercised discretionary authority by, among other things, having the ability to determine what entity would execute equity trades on behalf of the Plan. Bullock was a party in interest because he received payment for his services from Plan assets. Bullock was a securities broker. Bullock was the broker of record on the mutual fund accounts opened on behalf of the Plan. Bullock was licensed by National Association of Securities Dealers.

8. Securities America, Inc. ("SAI") is a general securities broker dealer. At all times relevant to this complaint, Bullock was an advisory affiliate of SAI. Bullock's actions and inactions were directly or indirectly controlled by SAI. SAI was a party in interest and fiduciary to the Plan by reason of providing investment advice or other services to the Plan through Bullock and other advisory affiliates.

9.     Massachusetts Financial Services Company ("MFS") is a mutual fund company, which owns and operates various mutual funds.  MFS is a subsidiary of Sun Life Financial, Inc. ("Sun Life").  MFS is a registered investment advisor under the Investment Advisors Act and provided services to the Plan.  MFS conducts business under the name MFS Investment Management.  At times relevant to this Complaint, MFS was a party in interest and fiduciary to the Plan by reason of providing services to the Plan, and by making discretionary decisions relating to the purchase and sale of stock, bonds, and other investment vehicles owned by the Plan.  The Trustees selected the MFS mutual fund as an option based upon information and advice provided by Bullock and SAI.  The Trustees continued to maintain MFS as a mutual fund option based upon the advice and consultation of SAI and Bullock.

## FACTUAL ALLEGATIONS

10.     Defendant Bullock has provided investment services to the Plan since 1984.  Defendant SAI has provided investment services to the Plan since approximately 1990.  Bullock provided investment advice to the Plan.  His investment advice served as the primary basis for investment decisions with respect to Plan assets.  He regularly met with and advised the Trustees regarding the particular needs of the Plan, including, among other things, investment policies or strategy, overall portfolio composition, or diversification of Plan investments.  Bullock further made recommendations as to the purchasing and selling of securities or investment options with respect to Plan assets.  Accordingly, Bullock was a fiduciary with respect to the Plan.

11.     On personal knowledge, the Plan is a self-directed or participant directed Plan.  Each participant has an individual account and may direct his or her salary deferrals to any investment option within a fixed menu of investment options.  Bullock was hired to assist the Plan in developing appropriate investment options for participants in the Plan.  The investment options are important to the

4

success, or not, of the investments of Plan participants.  The Trustees have a fiduciary responsibility to ensure that the investment choices that are available are reasonable and prudent and that the fees and expenses charged for investment advice and consulting to the plan participants are reasonable.  In addition, the Trustees have a fiduciary obligation and duty to make certain that the assets of the Plan are used for the exclusive benefit of Plan participants.

12.    SAI is a general broker dealer through which Bullock was licensed. Bullock was an advisory affiliate to SAI.  SAI operates, in part, through advisory affiliates.  Its advisory affiliates sell investment advice, investment products, and other investment services to retirement plans.  SAI provides various services to its advisory affiliates, such as Bullock, by providing educational services, research, product platforms, and other information.  Through this scheme, SAI and Bullock provided brokerage and investment services to retirement plans.  Bullock and SAI were fiduciaries or parties in interest to such retirement plan clients.  SAI was a fiduciary and a party in interest with respect to the Plan.

13.    The services of SAI were generally transparent to the Plan.  Bullock was the advisory affiliate through which SAI operated, and, on a day-to-day basis, it was Bullock with whom the Plan communicated.

14.    One of the investment services SAI and Bullock provided was to advise the Plan regarding an appropriate menu of investment options to the Trustees.  At least one of the investment options promoted by SAI and Bullock and which was offered as an investment option by the Trustees for Plan participants was a mutual fund operated by MFS.

15.    Another service Bullock provided was to meet with the Trustees on a periodic basis, typically quarterly. During such meetings, the performance of the investments was reviewed and Bullock provided  investment advice to the Trustees regarding investment policy and strategy and otherwise provided advice regarding investments suitable for the Plan.

5

16.     Bullock provided investment advice for a fee to the Plan. He provided services regarding appropriate investment options, investment policy, investment strategy, diversification, performance of Plan investments, and the monitoring of investment options. Bullock advised the Plan regarding the value of securities and products for investment of Plan assets and made recommendations as to the purchasing and selling of investments or securities with respect to Plan assets. The services of MFS were also necessary for the operation of the Plan. The services that the Defendants and MFS rendered on behalf of the Plan were paid for from Plan assets.

17.     The compensation Bullock and SAI received was paid from Plan assets. Bullock and SAI were compensated each time a Plan participant made a purchase from the investment menu by upfront sales commissions on each purchase and trailing 12b-1 fees on assets under management. For example, during 2002-2003, the upfront commissions could range from 1.00% to 0.25% depending on the assets under management and the particular investment option. These fees were deducted directly from the accounts of Plan participants. The compensation SAI and Bullock received for their services from Plan assets was significant. For example, Bullock was paid approximately $1.95 million from SAI for calendar years 2002 and 2003 combined in consideration of all his clients. One investment that SAI and Bullock advised the Plan to maintain and invest in was a mutual fund operated by MFS. Bullock and SAI were significant producers of investment for MFS in the retirement services area. SAI and Bullock had clients with significant interests in MFS mutual funds. Taken together, the clients of Bullock and SAI had over $100 million of assets under management with MFS.

18.     Plan participants were offered the opportunity to invest in MFS mutual funds, based upon the advice of Bullock and MFS. MFS received fees from Plan assets as a result of these investments. MFS also provided other services to the

/ / /

6

Plan, including record keeping services. MFS received fees from Plan assets for the services it rendered.

19.   In or about January 2002, Bullock negotiated an agreement with MFS by which Bullock and MFS agreed that Bullock would hire a former MFS employee with labor union and retirement sales experience. Bullock and MFS agreed that MFS would direct brokerage commissions on MFS portfolio transactions to SAI for Bullock's benefit. Bullock, in turn, would use this additional compensation to pay for the salary and expenses of the former MFS employee. This agreement was later ratified by SAI.

20.   As part of this arrangement with MFS, Bullock hired a former employee of MFS to assist in obtaining new retirement plan clients in January 2002. Bullock and MFS expected that sales of MFS securities would increase as a result of the arrangement.

21.   In order to effectuate its arrangement with Bullock, MFS increased commissions it was paying to SAI, increasing its 2002 annual target of directed commissions to SAI by $300,000. This increase was memorialized in an internal MFS memo dated March 1, 2002 and was also confirmed in writing to SAI in an e-mail in or about May 2002.

22.   Initially, SAI paid Bullock $10,000 per month from the directed commissions. In or about November 2002, SAI increased Bullock's portion to $12,500 per month. In or about May 2003, SAI made the higher payments retroactive to January 2002.

23.   As contemplated by his arrangement with MFS, Bullock negotiated with and then hired a former MFS employee, paying him $8,000 per month plus expenses. This employee began work on or about March 1, 2002.

24.   On or about May 23, 2003, MFS sent Bullock a letter wherein it stated that because it had "made a commitment to you and your team," "we have assigned your firm a goal of 12 plans and $60 million in new sales." MFS wrote that it

7

looked forward to growing their "partnership" and appreciated Bullock's "commitment."

25.   In November 2003, MFS suspended all of its directed commission practices, after these practices came under regulatory scrutiny.   Several months later, Bullock terminated the former MFS employee.

26.   In total, MFS directed $525,000 to SAI for Bullock's benefit; SAI received $420,000 (net of clearing charges), of which it passed on $262,500 to Bullock.

27.   Bullock's compensation from MFS was in addition to other fees received by Bullock for services related to the Plan.

28.   The extraordinary compensation Bullock received from MFS was a material fact that Bullock was obligated to disclose to the Trustees.   During the time this arrangement was in place, Bullock failed to disclose this extraordinary compensation to the Plan.

29.   SAI also failed to disclose the compensation to the Plan.

30.   MFS also failed to disclose the compensation to the Plan.

31.   Concurrent with his failure to disclose this extraordinary compensation, Bullock and SAI regularly advised the Plan to maintain MFS funds in their investment menu or to add MFS to their investment menu.

32.   At the time Bullock reached his agreement with MFS to increase his compensation from MFS, SAI had entered into a similar agreement to enlarge its commissions.   In January 2000, SAI entered into an agreement with MFS whereby MFS agreed to pay a brokerage commission on portfolio transactions within MFS funds in exchange for SAI providing high end visibility or "shelf space" within SAI's distribution systems.   In short, SAI agreed to promote the sale of MFS funds or to promote the retention by plans of MFS funds.   In exchange, MFS agreed to positively affect the brokerage commission to be paid to SAI based upon gross fund sales and retention of fund assets.   These charges were paid directly from money

8

invested in MFS funds, and was therefore paid by the Plan participants and, therefore, from Plan assets.

33.   SAI did not communicate to the Plan the existence of the agreement, nor did SAI indicate that any additional fee or fees were being paid to SAI.

34.   The payments made by MFS to SAI were in addition to other payments, including dealer concessions, shareholder servicing payments, and payments for services that would have otherwise been provided.

35.   The increase in payments was made in part by directing transactions within the MFS funds directly to SAI for execution, transactions which have the effect of increasing the compensation paid to SAI without revealing the increase in compensation and allowing the Plan to analyze the transaction for reasonableness.

36.   By entering into agreements with MFS and by failing disclose the directed broker arrangements, Bullock and SAI deprived the Trustees and Plan participants of true and accurate information regarding:

a.   How much they are paying in fees and expenses for the actual and necessary operation and administration of the Plan;

b.   Who was receiving Plan assets and what services or benefits the Plan was receiving in exchange;

c.   How much specific service providers are paid by the Plan and for what; and

d.   Whether the total amount paid to services providers (*i.e.* disclosed fees *combined with* directed broker or shelf space payments) was reasonable and incurred solely for the participants' benefit.

e.   Failed to reveal the fact that Bullock and SAI had a conflict of interest regarding the investments for which he was providing investment advice to the Plan.

///

///

9

37. MFS was censured for this activity by the SEC. The allegations regarding MFS in this Complaint are based upon the censure and other public documents.

38. SAI was fined by the National Association of Securities Dealers for its actions. The allegations in this Complaint regarding SAI are based upon information from NASD.[1]

39. The NASD has charged Bullock with violation of the rules of the NASD for this and other conduct.

### Defendants' Duties to the Plan under ERISA

40. ERISA is a comprehensive statute covering virtually all aspects of employee benefit plans, including retirement savings plans, such as the Plan:

> It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

ERISA § 2(b), 29 U.S.C. § 1001(b).

41. Under ERISA, those responsible for plan management stand in a fiduciary relationship to plan participants. Pursuant to ERISA, a "fiduciary" is defined broadly and includes all persons or entities that provide investment advice for a fee and includes all persons or entities that are able to exercise discretionary authority over the management of a plan or the payment of benefits. ERISA requires strict fidelity and loyalty in the execution of the Plan's management.

/ / /

---

[1] NASD is now known as the FINRA.

10

42.   ERISA imposes on Plan management a fiduciary duty, *inter alia,* of prudence, requiring those responsible for plan management to "discharge his [or her] duties with respect to a plan solely in the interest of the participants and their beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA §404(a)(1(B), 29 U.S.C. §1104(a)(1)(B).

43.   ERISA also imposes on those responsible for Plan management a duty of loyalty, requiring the fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries and . . . for the exclusive purpose of . . . providing benefits to the participants and their beneficiaries." ERISA § 404 (a)(1),(A),(i),  29 U.S.C. §1104(a)(1),(A),(i).

44.   ERISA §403(c)(1), 29 U.S.C. §1103(c)(1), mandates that:

> [T]he assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

45.   ERISA §§ 404(a)(1)(A)&(B) of ERISA, 29 U.S.C. § 1104(a)(1)(A) & (B), require that Plan fiduciaries, including the Defendants, "shall discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and:

   a.   [F]or the exclusive purpose of:

      i.   providing benefits to participants and their beneficiaries; and

      ii.   defraying reasonable expenses of administering the plan; and

   b.   [W]ith the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like

11

capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

46.    ERISA § 406, 29 U.S.C. § 1106, prohibits certain transactions between the Plan and "parties in interest."  This section provides that unless subject to an exemption as set forth in ERISA § 408, 29 U.S.C. § 1108, a fiduciary "shall not cause the plan to engage in a transaction . . . if he knows or should know that such a transaction constitutes a direct or indirect - sale or exchange, or leasing, of any property between the plan and a party in interest . . . furnishing of goods, services or facilities between the plan and a party in interest . . . transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1).

47.    ERISA places further limitations on transactions in which fiduciaries with respect to the Plan may engage.  Fiduciaries such as Bullock, SIA, and MFS (1) shall not "deal with the assets of the [P]lan in his own interest or for his own account"; (2) shall not "act in any transaction involving the [P]lan on behalf of a party (or represent a party) whose interests are adverse to the interests of the [P]lan" or its participants and beneficiaries; and (3) shall not "receive any consideration for his own personal account from any party dealing with such [P]lan in connection with a transaction involving the assets of the [P]lan." 29 U.S.C. § 1106(b).

48.    For purposes of section 406, a "party in interest" includes service providers to the Plan, including investment advisers like Bullock, SAI and MFS. ERISA § 3(14), 29 U.S.C. § 1002(14).

49.    ERISA § 405(a), 29 U.S.C. § 1105(a), provides that one fiduciary may be held liable for breaches of fiduciary duty committed by another fiduciary where

(1)    the fiduciary "participates knowingly in or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;"

(2)    the fiduciary, by his or her "failure to comply with section 1104(a) of this title in the administration of his specific

12

responsibilities which give rise to his status as a fiduciary" enables "such other fiduciary to commit such a breach;" or

(3)   the fiduciary "has knowledge of a breach by such other fiduciary," and does not make "reasonable efforts under the circumstances to remedy the breach."

50.   Bullock, SAI, and MFS were at all times aware of the fact that each was engaged in activity that breached their obligations and responsibilities to the Plan. This included, but was not limited to, concealing the acts or omissions of other fiduciaries knowing or recklessly disregarding that the act or omission was a breach of fiduciary duty; failing to determine the propriety or not of the transactions relating to Plan assets and thereby allowing other fiduciaries to commit a breach of their fiduciary duty; despite knowing of or recklessly disregarding the breach of fiduciary duty by their co-fiduciaries, failing to take reasonable efforts to remedy the breach, including the failure to inform other Plan fiduciaries of the wrongful conduct.

## COUNT I

### Breach of Fiduciary Duty

### 29 U.S.C. §1132(a)(2)

51.   Plaintiff restates and incorporates the allegations contained in the preceding paragraphs though fully set forth herein.

52.   As set forth in detail above, Defendants owe the Plan, its participants and beneficiaries, fiduciary duties including, without limitation:

a.   To conduct themselves as Plan fiduciaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent ERISA professional fiduciary would in operating and administering a 401(k) plan the size and character of the Plan;

/ / /

13

b.   To perform their duties as fiduciaries with the utmost loyalty and fidelity to the Plan and its participants and beneficiaries, avoiding at all times conflicts of interest, self-interest, and duplicity;

c.   To ensure, at all times, that Plan assets shall be held for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;

d.   To track and account for all transactions involving the Plan and Plan assets so as to ensure that Plan assets are retained, managed, and disbursed in compliance with the Plan documents and ERISA;

e.   To track and account for all transactions involving the Plan and Plan assets so as to ensure that Plan assets shall be held for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;

f.   To ensure that the fees and expenses incurred by the Plan are reasonable and incurred for the sole and exclusive benefit of Plan participants and beneficiaries;

g.   When engaging in transactions with respect to the Plan, to ensure that the payments from the Plan - whether they are direct or indirect - are reasonable for the services provided and made for the sole and exclusive benefit of Plan participants and beneficiaries;

h.   In operating and administering the Plan, to establish, implement, and follow procedures to properly and prudently determine

///

14

whether the fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

i.  To not charge the Plan or cause Plan assets to be used for any purpose or charge that is not reasonable for the services provided and to ensure that such charges and payments are made for the sole and exclusive benefit of Plan participants and beneficiaries; and

j.  To provide honest, accurate and complete information to the Trustees regarding the costs associated with their various investment choices and directions.

53.  As set forth in detail above, MFS, SAI and/or Bullock breached their fiduciary obligations to the Plan, Plan participants and beneficiaries by one or more of the following acts, among other conduct to be proven at trial:

a.  Agreeing that the Plan would pay - directly or indirectly - fees and expenses that were, or are, unreasonable or not incurred solely for the benefit of Plan participants and beneficiaries;

b.  Allowing or causing the Plan to pay - directly on indirectly - fees and expenses that were, or are, unreasonable or not incurred solely for the benefit of Plan participants and beneficiaries;

c.  Failing to communicate with the Trustees regarding the Plan honestly, clearly and accurately;

d.  Failing properly to inform and/or disclose to the Trustees the fees and expenses that are, or have been, paid by the Plan;

e.  Failing to inform and disclose to the Trustees in proper detail and clarity the transactions, fees and expenses that affect participants' accounts balances in connection with the purchase or sale of interests in investment alternatives;

f.  Charging hidden and excessive fees to the Plan;

15

g.   By the foregoing conduct, failing to exercise the care, skill, prudence and diligence that a prudent person would when acting in like capacity and familiar with such matters;

h.   Acting in transactions involving the Plan with parties whose interests were adverse to the Plan; and/or

i.   Receiving consideration for its or his own personal account from parties dealing with the Plan regarding transactions involving Plan assets.

53.   As set forth in detail above, as a result of these breaches, Plaintiff, the Plan, and the Plan's participants and beneficiaries have suffered financial losses and damages.

54.   Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), the Defendants are liable to restore to the Plan the losses they experienced as a direct result of the Defendants' breaches of fiduciary duty and are liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees, and to disgorge any payments received.

## COUNT II

### Other Remedies for Breach of Fiduciary Duty

### 29 U.S.C. §1132(a)(3)

55.   Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though fully set forth here.

56.   As an alternative to the cause of action stated in Count I, Plaintiff seeks further relief pursuant to ERISA § 502(a)(3), 29 U.S.C., § 1132(a)(3).

57.   Under section 502(a)(3), a fiduciary may enjoin any act that violates ERISA or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

///

///

16

58.    Defendants are the fiduciaries of the Plan and occupy a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.

59.    These Defendants have discretion and control over the Plan's assets and are strictly obligated to exercise that control "for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan."

60.    Although only Plan participants and beneficiaries are entitled to Plan assets and to the benefit of Plan assets, in the absence of full and candid disclosure from the Defendants, Plan participants and beneficiaries do not know, and have no means of knowing, how their assets have been managed and disbursed.

61.    As set forth in detail above, these Defendants have caused and/or allowed the Plan to pay - directly or indirectly - excess fees and expenses to Defendants.

62.    Accordingly, the Court should order that these Defendants render an accounting of all transactions, disbursements, and dispositions occurring in, in connection with, or in respect of, the Plan and its assets.

63.    Plaintiff respectfully requests that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees and expenses incurred paid to them, whether paid directly by the Plan or indirectly transferred among Plan service providers or other third parties.

64.    Plaintiff respectfully requests that to the extent these Defendants do not or cannot account for all such transactions, the Plan documents and other applicable law, the Court surcharge against these Defendants and in favor of the Plan all amounts for which they cannot account.

65.    Plaintiff further seeks injunctive and other appropriate equitable relief, including disgorgement of all fees paid to Defendants, to redress the wrongs

/ / /

17

described above, and to cause them to cease in order for the Plan's participants and beneficiaries to receive the full benefit of their retirement savings in the future.

## COUNT III

### Other Remedies for Breach of Fiduciary Duty

### ERISA 29 U.S.C. §1132(a)(3)

66.    Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though fully set forth here.

67.    As a further alternative to the cause of action stated in Count I, Plaintiff seeks further relief against Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

68.    One form of equitable relief available under section 503(a)(3) is equitable restitution.

69.    By secretly charging the Plan for the payments described above, Defendants obtained funds that should have been used solely for the benefit of Plan participants and beneficiaries for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan.

70.    Defendants knew or should have known that those payments were the Plan's assets and that they should have been used solely for the benefit of Plan participants and beneficiaries for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan.

71.    Because the payments were used for purposes not permitted by ERISA, these monies rightfully and in good conscience belong to the Plan and its participants and beneficiaries.

72.    The payments are specifically identifiable funds.

73.    The payments are in the possession and custody of Defendants.

/ / /

18

COMPLAINT

74.     Plaintiff seeks equitable restitution of all wrongful payments made, along with any profit from Defendants made by or with such payments.

## COUNT IV

### Prohibited Transactions (29 U.S.C. Section 1106(a))

75.     Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though fully set forth here.

76.     As set forth above in detail, MFS, SAI and/or Bullock were fiduciaries with respect to the Plan.  By engaging in the conduct described above, MFS, SAI and/or Bullock caused or allowed the Plan to engage in one or more transactions, knowing or reasonably on notice that the transactions constituted a direct or indirect sale or exchange of property between the Plan and a party in interest, the furnishing of services to the Plan by a party in interest, or a transfer to, use by or for the benefit of a party in interest of Plan assets.  The transactions were not within any exception provided in 29 U.S.C. Section 1108.  Plaintiff therefore seeks all remedies available as set forth herein.

## COUNT V

### Prohibited Transactions (29 U.S.C. Section 1106(b))

77.     Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though fully set forth here.

78.     As set forth above in detail, MFS, SAI and/or Bullock breached their fiduciary obligations to the Plan, Plan participants, and beneficiaries.  In addition, MFS, SAI and/or Bullock:

    a.     Dealt with the assets of the Plan in his or her interest or for his or her own account;

    b.     Acted in a transaction involving the Plan on behalf of a party whose interests were adverse to the interests of the Plan or the interests of its participants or beneficiaries; or

///

19

c.  Received consideration for his personal account from any party dealing with the Plan in connection with transaction involving the assets of the Plan.

Plaintiff therefore seeks all remedies available as set forth herein.

## COUNT VI

### California Business and Professions Code Section 17200, *et seq.*

### Unlawful Business Acts and Practices

79.  Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though fully set forth here.

80.  The acts and practices of the Defendants, as described above, constitute unlawful business acts and practices.

81.  The Defendants failed to disclose material facts regarding the relationship between the parties.  The Defendants materially misstated, misrepresented or failed to disclose material facts regarding the fees and expenses incurred by the Plan.  The Defendants engaged in transactions that were adverse to the Plan and materially misstated, misrepresented or failed to disclose material facts regarding those transactions.

82.  The business practices alleged herein are unlawful under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1332(a)(2), (a)(3) for breaches of fiduciary duty, and 29 U.S.C. §§ 1106(a), (b) for engaging in prohibited transactions.

83.  As a result of the above violations of the unlawful prong of the Business and Professions Code Section 17200, *et seq.*, Plaintiff has suffered an injury in fact and has lost money or property as set forth above, and the Defendants have been unjustly enriched at the expense of the Plan.

84.  Plaintiff is entitled to such orders and judgments as may be necessary to provide for complete equitable monetary relief by disgorging the Defendants' ill-gotten gains and/or restoring to the Plan as a person in interest all money lost or

paid as a result of Defendants' wrongful conduct.

## COUNT VII

### California Business and Professions Code Section 17200, *et seq.*

### Unfair Business Acts and Practices

85.   Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though fully set forth here.

86.   The acts and practices of the Defendants, as described above, constitute unfair business acts and practices.

87.   Plaintiff suffered substantial injury by virtue of Defendants' acts. The Defendants failed to disclose material facts regarding the relationship between the parties. The Defendants materially misstated, misrepresented, or failed to disclose material facts regarding the fees and expenses incurred by the Plan. The Defendants engaged in transactions that were adverse to the Plan and materially misstated, misrepresented or failed to disclose material facts regarding those transactions.

88.   There is no benefit to consumers or competition by misstating, misrepresenting and failing to disclose fee and expense agreements and transactional information that causes a Plan to engage in activities that are not in its interest. Indeed, the harm to consumers and competition is substantial. The Plan suffered monetary losses it could not have avoided due to the Defendants' unfair business practices.

89.   The business practices alleged herein have caused harm to the Plaintiff that outweighs any benefit, which offend public policy, and which are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

90.   As a result of the above violations of the unfair prong of the Business and Professions Code Section 17200, *et seq.*, Plaintiff has suffered an injury in fact and has lost money or property as set forth above, and the Defendants have been unjustly enriched at the expense of the Plan.

91.     Plaintiff is entitled to such orders and judgments as may be necessary to provide for complete equitable monetary relief by disgorging the Defendants' ill-gotten gains and/or restoring to the Plan as a person in interest all money lost or paid as a result of Defendants' wrongful conduct.

## COUNT VIII

### California Business and Professions Code Section 17200, *et seq.*

### Fraudulent Business Acts and Practices

92.     Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though fully set forth here.

93.     The acts and practices of the Defendants, as described above, constitute fraudulent business acts and practices.

94.     The Defendants failed to disclose material facts regarding the relationship between the parties.   The Defendants materially misstated, misrepresented, or failed to disclose material facts regarding the fees and expenses incurred by the Plan.  The Defendants engaged in transactions that were adverse to the Plan and materially misstated, misrepresented or failed to disclose material facts regarding those transactions.

95.     The business acts and practices alleged herein have a likelihood to deceive or in fact did deceive the Plaintiff.

96.     As a result of the above violations of the fraudulent prong of the Business and Professions Code Section 17200, *et seq.*, Plaintiff has suffered an injury in fact, and has lost money or property as set forth above. The Defendants have been unjustly enriched at the expense of the Plan.

97.     Plaintiff is entitled to such orders and judgments as may be necessary to provide for complete equitable monetary relief by disgorging the Defendants' ill-gotten gains and/or restoring to the Plan as a person in interest all money lost or paid as a result of Defendants' wrongful conduct.

/ / /

22

COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

1.      find and declare that the Defendants have breached their fiduciary duties as described above;

2.      find and declare that the Defendants have engaged in a prohibited transaction pursuant to the provisions of 29 U.S.C. § 1106 and not exempted pursuant to the provisions of 29 U.S.C. § 1108;

3.      order the Defendants to make good to the Plan all losses that the Plan incurred as a result of the conduct described above and to restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

4.      impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty and/or cause the Defendants to disgorge such monies and return them to the Plan;

5.      disgorge all payments made to Defendants from Plan assets;

6.      order the Defendants to make good to the Plan all amounts that were received by them as a result of prohibited transactions;

7.      require the Defendants to render an accounting of the prohibited transactions;

8.      award actual damages to the Plan in the amount of its monetary losses;

9.      require Defendants to render an accounting as set forth above;

10.      surcharge against Defendants and in favor of the Plan all amounts involved in transactions that such accounting reveals were or are improper, excessive and/or in violation of ERISA;

11.      permanently enjoin Defendants from breaching their fiduciary duties in each respect set forth in the Complaint;

12.      order costs and attorneys fees pursuant to, *inter alia*, §502(g) of ERISA and the common fund doctrine;

/ / /

13.   order equitable restitution or other available equitable relief against the Defendants;

14.   order the payment of interest to the extent it is allowed by law;

15.   award appropriate remedies for the misconduct, including restitution, disgorgement, or other remedial or equitable, and/or injunctive relief as permitted by law, equity, and the federal statutory provisions sued hereunder, pursuant to Fed. R. Civ. P. 64 and 65;

16.   grant any other and further relief the Court deems appropriate; and

17.   provide such other relief as may be permitted by law.

DATED:  June 16, 2008            ROSNER & MANSFIELD, LLP

                                By: _____
                                    ALAN M. MANSFIELD
                                    alan@rosnerandmansfield.com

                                WHATLEY DRAKE & KALLAS, LLC
                                Joe R. Whatley, Jr.
                                jwhatley@wdklaw.com
                                1540 Broadway, 37th Floor
                                New York, NY 10036
                                Tel: (212) 447-7070
                                Fax: (212) 447-7077

                                WHATLEY DRAKE & KALLAS, LLC
                                Glen M. Connor
                                gconnor@wdklaw.com
                                1000 Park Place Tower
                                2001 Park Place North
                                Birmingham, Alabama 35203
                                Tel: (205) 328-9576
                                Fax: (205) 328-9669

                                Attorneys for Plaintiff

24