WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr., Esq.
jwhatley@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
FAX: (212) 447-7077

ROSNER & MANSFIELD, LLP
Alan M. Mansfield, Esq. (SBN: 125998)
alan@rosnerandmansfield.com
10085 Carroll Canyon Road, Suite 100
San Diego, CA  92131
Tel: (858) 348-1005
FAX: (858) 348-1150

Attorneys for Plaintiffs

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

IATSE LOCAL 33 SECTION
401(k) PLAN BOARD OF
TRUSTEES,

        Plaintiff,

      v.

MICHAEL L. BULLOCK,
individually and doing business as
INNOVATIVE EMPLOYEE
BENEFITS PROGRMS;
SECURITIES AMERICA, INC.;
MASSACHUSETTS FINANCIAL
SERVICES COMPANY,

        Defendants.

Case No. CV08-03949-AHM (SSx)

**PLAINTIFF IATSE LOCAL 33
SECTION 401(k) PLAN BOARD OF
TRUSTEE'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION TO
DISMISS FILED BY
MASSACHUSETTS FINANCIAL
SERVICES COMPANY**

**Judge:  Judge A. Howard Matz**

Hearing Date:  October 27, 2008
Time:              10:00 a.m.
Place:             Courtroom 14

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................ 1

II.   STANDARD OF REVIEW ............................................................... 1

III.  FACTUAL ALLEGATIONS IN COMPLAINT ............................... 2

IV.   ARGUMENT .................................................................................... 3

A.    The Complaint States a Claim Against MFS Pursuant to ERISA ........ 3

B.    Based on MFS's Own Arguments, the UCL Claims are Not Preempted ....................................................................................... 6

C.    Plaintiff's UCL Claims are Not Barred by the Holding of *Bowen v. Ziasun Technologies, Inc.* .......................... 7

D.    Plaintiff's UCL Claims are Timely ................................................ 10

E.    Plaintiff has Standing to Bring Its UCL Claims .......................... 12

F.    The Court Should Grant Leave to Amend ................................... 14

V.    CONCLUSION .............................................................................. 15

i

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Arizona State Carpenters Pension Trust v. Citibank (Arizona)*, 125 F.3d 715 (9th Cir. 1997) ................................................................................6, 7

*Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007) ...................2

*Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996) ........................................14

*Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005) ....................7

*Conley v. Gibson*, 355 U.S. 41 (1957)..............................................2

*DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655 (9th Cir. 1992)....................14

*General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518 (9th Cir. 1993)................6

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989)................................2

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)........................................1

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000)................................................................................4

*Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007) ...................................2

*Landwehr v. DuPree*, 72 F.3d 726 (9th Cir. 1995).................................4

*LeBlanc v. Cahill*, 153 F.3d 134 (4th Cir. 1998) ..................................4

*North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578 (9th Cir. 1983)................1

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) ..................................2

*Rutledge v. Seyfarth*, 201 F.3d 12112 (9th Cir. 2000)..............................4

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ........................................1, 2

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986)................................................................................14

*SEC v. Ritchie*, 2006 U.S. Dist. LEXIS 57258, *5 (C.D. Cal. Order August 14, 2006) ..........................................................15

*Spinner Corp. v. Princeville Development Corp.*, 849 F.2d 388 (9th Cir. 1988).......8

*Strigliabotti v. Franklin Resources, Inc.*, 2005 WL 645529, *9 (N.D. Cal. March 7, 2005)............................................................9, 10

*Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977 (9th Cir. 2002)...................3

ii

TABLE OF AUTHORITIES (Cont'd)

Page

FEDERAL STATUTES

29 United States Code

Section 406 ..................................................................................5
Section 1002 ............................................................................4, 5
Section 1106 ..........................................................................1, 3, 4
Section 1132 ......................................................................1, 3, 4, 7

CALIFORNIA CASES

*Animal Legal Defense Fund v. Mendes*, 160 Cal.App.4th 136 (2008).....................14

*Benitez v. North Coast Women's Care Medical Group, Inc.*, 106 Cal.App.
4th 978 (2003)..................................................................................6

*Bowen v. Ziasun Technologies, Inc.*, 116 Cal.App.4th 777 (2004)..............7, 8, 9, 10

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797 (2005).................................10, 11

*Grisham v. Philip Morris U.S.A.*, 40 Cal.4th 623 (2007)........................................10

*Hall v. Time Inc.*, 158 Cal.App.4th 847 (2008) ......................................13

*Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th
1282 (2002)..................................................................................10, 11

*Nogart v. Upjohn Co.*, 21 Cal.4th 383 (1999) ..........................................11

*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688 (2007)....9, 13

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal.App.4th
102 (2003)..................................................................................12

*Regents of Univesity of California v. Superior Court*, 20 Cal.4th 509 (1999).........12

*Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal.App.4th 345
(2000)..................................................................................7, 8, 9, 10

*Sanchez v. South Hoover Hospital*, 18 Cal.3d 93 (1976) ........................................12

*Snapp & Associates Ins. Services, Inc. v. Malcom Bruce Burlingame
Robertson*, 96 Cal.App.4th 884 (2002) ........................................10, 11

*Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773 (1979) ..............................................12

/ / /

/ / /

/ / /

iii

## TABLE OF AUTHORITIES (Cont'd)

Page

### CALIFORNIA STATUTES

Business & Professions Code

    Section 17200, *et seq.* ................................................................6, 13

### OTHER

29 Code of Federal Regulations

    2509.75-2(c) (DOL Interpretive Bulletin 75-2, July 28, 1975)........................5

Federal Rules of Civil Procedure

    Rule 12(b)(6) ...........................................................................1

    Rule 15........................................................................................14

iv

This Memorandum is submitted in Opposition to the Motion to Dismiss filed by Massachusetts Financial Services Company ("MFS"). The claims asserted by the Plaintiff state a claim against MFS upon which relief can be granted. Dismissal is not appropriate. At a minimum, leave to amend the initial Complaint should be granted to address any alleged deficiencies.

## I.  INTRODUCTION

The Complaint in this case seeks relief on behalf of the participants and beneficiaries of a 401(k) Plan ("the Plan"). The Complaint alleges that MFS, a party in interest to the Plan, made payments to the Plan's investment advisor, a fiduciary to the Plan, to encourage the fiduciary to promote the mutual funds of MFS to the Trustees of the Plan. MFS knew or should have known that the investment advisor was a Plan fiduciary. As it acted as more than a "record keeper" and in fact actively participated in a transaction prohibited by ERISA, 29 U.S.C. § 1106, MFS is subject to appropriate relief in an action by the Trustees pursuant to 29 U.S.C. § 1132(a). The Complaint alleges in the alternative that the conduct violated applicable California law.

The Plaintiff's Complaint sets forth sufficient facts to state a cause of action against MFS under either ERISA or California state law. The MFS Motion ignores the significant factual and legal allegations in the Complaint, which demonstrate that MFS was a party in interest to the Plan and made payment to the fiduciary to encourage the Plan to engage in transactions with MFS. This was a prohibited transaction in violation of ERISA.

## II.  STANDARD OF REVIEW

The purpose of a Federal Rule 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the case. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578, 581 (9th Cir. 1983). "The issue is not whether a plaintiff will ultimately prevail but whether the

1

claimant is entitled to offer evidence to support the claims . . . ." *Scheuer*, 416 U.S. at 236; *see also Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007).

Detailed factual allegations are not required to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Further, at the motion to dismiss stage, the court must accept as true all of the facts alleged in the complaint, and draw all reasonable inferences in the plaintiff's favor. *See Scheuer*, 416 U.S. at 236; *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). A court will only dismiss a complaint without leave to amend if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989) (citation omitted).

### III.  FACTUAL ALLEGATIONS IN COMPLAINT

The conduct that forms the basis of this lawsuit is simple and straightforward.

1.    The Plan is a 401(k) Plan.  The Plaintiff Board of Trustees is a fiduciary with respect to the Plan, subject to ERISA. (Compl. ¶¶ 5, 6.)

2.    Michael Bullock and Securities America, Inc. ("SAI") were investment advisors to the Plan.  The Complaint alleges that they were fiduciaries with respect to the Plan because, among other things, they were paid for their investment advice.   Bullock and SAI are Defendants in this case. (Compl. ¶¶ 7, 8.)

3.    Bullock and SAI recommended to the Trustees that MFS mutual funds be offered as an investment option to Plan participants. (Compl. ¶¶ 7, 8.)  Based upon the advice of Bullock and SAI, the Plan offered MFS funds as investment options. (Compl. ¶ 18.)  MFS was compensated for the services which it rendered. Thus, MFS was a party in interest to the Plan. (Compl. ¶ 48.)

4.    Bullock negotiated an agreement with MFS whereby MFS agreed to pay Bullock handsomely for promoting its mutual fund products – a material fact

2

1    not disclosed to the Plan.  (Compl. ¶¶ 19, 20, 21, 22.)  MFS knew or should have

2    known that Bullock and SAI were Plan fiduciaries.  (Compl. ¶ 50.)

3         5.     MFS paid consideration to Bullock and SAI to encourage Plans to

4    choose MFS Funds as an investment option for the Plan.  (Compl. ¶¶ 19-22.)

5         6.     The Complaint alleges that MFS was a party in interest and fiduciary

6    to the Plan by reason of providing services to the Plan.  (Compl. ¶¶ 18, 48.)  MFS

7    provided access to its MFS mutual fund product for investment to Plan participants.

8    (Compl. ¶ 18.)  The allegations of the Complaint demonstrate that Plan participants

9    were offered the opportunity to invest in MFS funds based upon the advice received

10   from Bullock and MFS.  MFS received fees from Plan assets as a result of these

11   investment decisions.  (Compl. ¶ 18.)  Bullock's involvement in this scheme was

12   not disclosed until FINRA announced an investigation into these practices last year.

13   (Compl. ¶ 39.)  MFS has been censured for this activity by the SEC.  (Compl., ¶

14   37.)

15        7.     The Complaint asserts claims pursuant to 29 U.S.C. § 1132(a)(2) and

16   29 U.S.C. § 1132(a)(3), as well as state law.  (Compl. ¶ 1.)

## IV.  ARGUMENT

### A.  The Complaint States a Claim Against MFS Pursuant to ERISA.

19        The allegations in Plaintiff's Complaint are clear.  SAI and Bullock are

20   fiduciaries with respect to the Plan.  (Compl. ¶ 7, 8.)  MFS provided services to the

21   Plan by virtue of the fact that Plan Participants were allowed to participate in MFS

22   mutual funds and MFS was compensated for this service.  (Compl., ¶ 18.)  What

23   was not disclosed was that MFS paid the fiduciaries to encourage the Plan

24   fiduciaries to continue to use MFS mutual funds.  (Compl., ¶¶ 32, 37.)  MFS

25   therefore a party in interest with respect to the Plan.  MFS then engaged in a

26   scheme whereby it made payments to fiduciaries of the Plan for the promotion of its

27   own self interest.  This scheme violates the prohibited transaction rules of ERISA,

28   29 U.S.C. §§ 1106(a)(1) and 1106(b), and is subject to redress pursuant to 29

3

1   U.S.C. § 1132(a)(3).  *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.,*

2   530 U.S. 238, 120 S. Ct. 2180 (2000); *see also Rutledge v. Seyfarth*, 201 F.3d 1212

3   (9th Cir. 2000) (recognizing Ninth Circuit cases creating a cause of action against

4   non-fiduciaries who are parties in interest and who engage in prohibited actions

5   under 29 U.S.C. § 1106).

6       The facts alleged in the Complaint demonstrate that MFS was a non-

7   fiduciary party in interest that engaged in prohibited transactions with a fiduciary to

8   the plan (Bullock or SAI) in violation of 29 U.S.C. § 1106.  *See Landwehr v.*

9   *DuPree,* 72 F.3d 726, 733 (9th Cir. 1995).  The Complaint alleges facts from which

10  a fact finder could determine that the payments to Bullock by MFS were to

11  encourage or maintain Plan investments with MFS, breaching 29 U.S.C.

12  § 1106(b)(3), which prohibits a fiduciary from receiving consideration for their

13  personal account from a party dealing with the Plan in connection with a transaction

14  involving the assets of the Plan.  The same payments could also be determined to

15  violate 29 U.S.C. § 1106(a)(C) or (D).  Plan assets were transferred to MFS.  As a

16  consequence of this transfer, Bullock received additional, unreasonable

17  compensation for the services he provided.  The scheme could also violate 29

18  U.S.C. § 1106(b)(2), which prohibits transactions where interests of the fiduciary

19  and party in interest are adverse to the Plan or its participants.  *Harris Trust &*

20  *Savings Bank v. Salomon Smith Barney, Inc., supra,* 530 U.S. 238; *Rutledge v.*

21  *Seyfarth, supra,* 201 F.3d 1212; *see also, LeBlanc v. Cahill,* 153 F.3d 134, 151-153

22  (4th Cir. 1998) (finding that 29 U.S.C. § 1132(a)(3) authorized cause of action

23  against non-fiduciary participant arising from violations of prohibited transaction

24  rules, 29 U.S.C. § 1106(b)).

25      MFS cannot reasonably dispute at this stage of the proceedings that it is a

26  party in interest to the Plan.  (Compl., ¶ 48.)  A party in interest is defined in

27  ERISA as "a person providing services to such Plan."  29 U.S.C. § 1002(14)(B).

28  MFS is alleged in the Complaint to provide services to the Plan.  (Compl., ¶ 18.)

4

The narrow view of the services which MFS claims were rendered cannot withstand scrutiny. The services that Plaintiff claims were offered are not limited to investment advisory services or record keeping services. The allegation in the Complaint is that MFS provided the "opportunity to invest in MFS mutual funds," a service separate and distinct from any investment advice or record keeping MFS may have offered within the mutual funds. (Compl., ¶ 18.)

The fact that MFS is a mutual fund does not change the analysis. Mutual funds are not relieved of responsibility for engaging in a prohibited transaction just because they are a mutual fund. 29 U.S.C. § 1002(21)(b) simply provides that investment by an ERISA Plan in a mutual fund does not, only by the fact of the investment alone, render the mutual fund a party in interest to the Plan. ERISA still regulates other aspects of the relationship that arise from the Plan's use of the mutual fund as a service provider. Thus, if a fiduciary allows investment in an investment company such as MFS with the expectation that the investment company would purchase securities from another party in interest, there is a prohibited transaction under Section 406 of ERISA. *See, DOL Interpretive Bulletin 75-2* (July 28, 1975), 29 C.F.R. 2509.75-2(c). Here, Bullock and MFS are alleged to have engaged in a similar scheme. Bullock encouraged the Plan to remain invested in MFS mutual funds with the expectation that MFS would compensate him for maintaining or encouraging the investment − a fact not disclosed to the Plan. (Compl., ¶ 19-32.) MFS knew Bullock was a fiduciary. Under these facts, Bullock, by maintaining the investment, has used the investment in MFS for his own account. This was done with MFS's knowing participation and cooperation and therefore was a prohibited transaction. (Compl., ¶¶ 19-32.) ERISA, Sections 406(a)(1)(C) or (D); 406(b)(B)(1).

In short, MFS paid Bullock and SAI so that the Plan would maintain investments in MFS mutual funds. The Plan maintained its investments in MFS pursuant to the advice of Bullock and SAI. Bullock received consideration for his

5

1   personal account. (Compl., ¶ 50.) These facts state a claim against MFS for taking

2   part in a prohibited transaction. The Motion to Dismiss should be denied.

3       **B.**      **Based on MFS's Own Arguments, the UCL Claims are Not**

4                 **Preempted.**

5       Plaintiff understands the scope of ERISA's preemptive reach. However,

6   MFS seeks to have it both ways – it claims ERISA applies and preempts Plaintiff's

7   claim under California Business & Professions Code § 17200, *et seq.* ("UCL), but

8   then tries to claim it is not statutorily liable as a fiduciary under ERISA. Such an

9   argument has been rejected by the courts. *See General Am. Life Ins. Co. v.*

10  *Castonguay*, 984 F.2d 1518, 1522 (9th Cir. 1993) (finding no ERISA preemption of

11  claim involving ERISA entity); *Benitez v. North Coast Women's Care Medical*

12  *Group, Inc.*, 106 Cal.App.4th 978, 990 (2003) (overruling demurrer based on

13  finding that ERISA preemption does not apply to California state claims asserted

14  against a defendant who is not an ERISA entity).

15      Claims against non-ERISA entities are not preempted because ERISA only

16  regulates certain relationships among ERISA entities. As noted in *Benitez*, ERISA

17  entities are the employer, the beneficiaries under the plan, the plan, and the plan

18  fiduciaries. *Id.* So, if MFS is not a plan fiduciary as it claims or is not a party in

19  interest as it implies, it cannot claim ERISA preemption.

20      In *Arizona State Carpenters Pension Trust v. Citibank (Arizona)*, 125 F.3d

21  715, 723-727 (9th Cir. 1997), the plaintiff was a pension fund that brought state law

22  actions against banks that served as depository and custodial agent for the Funds.

23  The complaint alleged that the bank breached its custodial agreements by failing to

24  notify the trustee of defaults of payments for investments made by the trust fund's

25  investment advisors. The complaint alleged, among other things, state law causes

26  of action for breach of contract, common law duties, negligence, and fraud. The

27  court held that the state law claims for breach of contract, negligence, fraud, and

28  common law duties fell outside the pre-emption reach of ERISA because they did

6

not address the employee benefit structure, they were not aimed at binding employers or plan administrators' particular practices, they did not preclude uniform administrative practices, and they were not alternative enforcement mechanism for employees to obtain benefits. The court held that the state laws imposed a duty of care on all professional regardless of whether ERISA was involved or not. Because the duties do not depend on ERISA in any way, and particularly because the causes of action did not purport to regulate the relationships between ERISA entities, the claims were not pre-empted. 125 F.3d at 723-724. Indeed, in the case primarily relied upon by MFS, *Cleghorn v. Blue Shield of California,* 408 F.3d 1222 (9th Cir. 2005), ERISA prohibition was applied because the plaintiff's claims were merely disguised claims for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). *Id.* at 1225-1226. *Cleghorn* did not specifically address the applicability of preemption to claims, which are asserted pursuant to 29 U.S.C. § 1132(a)(2) or (a)(3), like the Plaintiff's claims herein.

If the Court finds that Plaintiff has adequately alleged that MFS operated as a fiduciary or party in interest to IATSE, the UCL claims may well be preempted as to MFS. However if, as MFS argues, the Court finds it is a non-ERISA entity and is not a fiduciary to plaintiff, the UCL claims against MFS are not preempted under the above authorities.

## C.   **Plaintiff's UCL Claims are Not Barred by the Holding of _Bowen v. Ziasun Technologies, Inc._**

MFS next argues that Plaintiff's claims under the UCL are barred by the holding of *Bowen v. Ziasun Technologies, Inc.*, 116 Cal.App.4th 777, 790 (2004) that UCL claims do not apply to transactions in securities. However, California courts are divided on this issue, and courts that have addressed this conflict have given *Bowen* a very limited reading.

In *Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal.App.4th 345 (2000), instead of selling plaintiff's stock in a timely fashion, Morgan delayed the

1   sale of appellant's stock.  During this delay period, Morgan "traded ahead" by

2   selling its own large block of stock first – a practice which, as here, violated NASD

3   (now FINRA) regulations.   Morgan filed a demurrer, contending that federal

4   securities law preempted plaintiff's claims.  The trial court ultimately sustained the

5   demurrer on the grounds of federal preemption, but the Court of Appeal reversed:

> In contrast to the issue of order flow payments, where the SEC has
>
> legalized the practice in question as a matter of federal law, there is no
>
> SEC rule, NASD rule, or other federal law or regulation allowing the
>
> very different practice of trading ahead, which is in issue here.  In fact,
>
> the practice of trading ahead is not permitted by federal civil or
>
> criminal law. . . .  [S]ince trading ahead constitutes the crime of mail
>
> fraud under federal law, it is actionable under the UCL, which borrows
>
> other law, including federal law, to define the "unlawful" practices that
>
> are UCL violations.

15  *Id.* at 353.

16      The Court distinguished the Ninth Circuit's decision in *Spinner Corp. v.*

17  *Princeville Development Corp.* 849 F.2d 388 (9th Cir. 1988) (relied upon heavily in

18  the *Bowen* decision cited by MFS).  *Spinner* was decided under Hawaii law and the

19  Court found its "little FTC Act" was inapplicable to securities law violations -- but

20  because the Hawaii Legislature in passing the law had so indicated.  The Court in

21  *Roskind* held:

> The California UCL, by contrast, has always been given a broad and
>
> sweeping ambit by our Legislature and our Supreme Court.  *Cel-Tech,*
>
> *supra,* 20 Cal.4th at p. 181; *Diamond, supra,* 19 Cal.4th at p. 1047, fn.
>
> 12.  The UCL contains no language supporting an exclusion for
>
> securities, and under the plain language of the UCL, we cannot create
>
> such an exclusion. (Ibid.)  In addition, we are bound (as would be the

28  / / /

8

1    Ninth Circuit, on this issue of state law) by our own Supreme Court's

2    broad interpretation of California's UCL.

3  *Roskind*, at 355 n. 9.

4    The holding in *Bowen* has been limited to *securities transactions, i.e.,* the

5  buying and selling of a security.  UCL claims that merely implicate a securities

6  transaction are not barred.  *See Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151

7  Cal.App.4th 688, 714-716 (2007) (UCL claims arising from defamatory stock

8  reports are proper, holding "Whether one agrees with *Bowen* or not [the Court

9  noted the Attorney General had filed an amicus brief arguing that *Bowen* was

10 wrongly decided], its holding that securities transactions are not covered under the

11 UCL bars lawsuits based on deceptive conduct in the sale and purchase of

12 securities, nothing more.")[1]; *Strigliabotti v. Franklin Resources, Inc.*, No. 04-

13 00883, 2005 WL 645529, *9 (N.D. Cal. March 7, 2005) (claims arising from

14 overcharging of fees for management of securities proper under UCL, denying

15 motion to dismiss on that ground).

16    In *Strigliabotti*, the plaintiffs were shareholders in several mutual funds that

17 sued various investment advisors claiming that the advisory and distribution fees

18 that the defendants received were excessive in violation of Rule 12b-1 and § 36(b)

19 of the federal Investment Company Act.  2005 WL 645528 at *1.  The plaintiffs

20 sought to recover the excess profits wrongfully retained by defendants, and any

21 other excessive compensation or improper payments received and retained by

22  [1]    Although, as the *Overstock* court pointed out (and the *Bowen* court claimed),
23 *Roskind* addressed the question of whether federal securities law preempts a UCL
24 claim relating to securities transactions, the court began its analysis with a review
    of the broad precedents underpinning the UCL.  It concluded that the UCL
25 potentially *could* provide a remedy for the securities violation at issue if not
26 preempted by federal law in that context.  As the *Overstock* decision found, this
    ruling thus was integral to its determination that federal securities law *did not*
27 preempt the plaintiff's UCL claim and was not dicta.  *See Roskind, supra*, at 352-
28 56.

9

defendants in breach of their fiduciary duties, based on violations of the UCL. Defendants moved to dismiss the UCL claims under the holding in *Bowen*. *Id.* at *9. The court rejected the defendant's broad reading of *Bowen*, holding that "the *Bowen* case is limited to 'securities transactions,' and does not encompass all situations where securities are somehow implicated but not purchased or sold." *Id.* Therefore, the court held that the UCL can be used to challenge and alleged scheme to overcharge investors in the management of securities. *Id.*

Like the UCL claims upheld in *Strigliabotti*, Plaintiff here alleges wrongful conduct related to the extraordinary compensation that Bullock received from MFS that implicates Plan assets. (*See, e.g.,* Compl., ¶¶ 28, 31.) These allegations arise from the extraordinary compensation that MFS paid to Bullock and SAI in breach of duties owed the Plaintiff. Therefore, even if the *Bowen* decision was correctly decided (as noted above it is contrary to *Roskind*, the Attorney General's office disagrees with its holding and the California Supreme Court has not addressed the issue), Plaintiff's UCL claim is not barred as this case does not involve a direct claim based on a direct securities transaction, such as at issue in *Bowen*.

### D.   Plaintiff's UCL Claims are Timely.

Defendant contends that Plaintiff's UCL claims are barred by the four-year statute of limitations. However, even if Plaintiff's claims accrued more than four years prior to filing the Complaint, "[a]n important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005).[2]  "A plaintiff has reason to

---

[2]   MFS contends that the discovery rule does not apply to unfair competition claims. However, the California Supreme Court has not addressed this issue. In fact, the California Supreme Court has recently stated that "this point is currently not settled under California law." *Grisham v. Philip Morris U.S.A.*, 40 Cal.4th 623, 635, n. 7 (2007) (comparing *Snapp & Associates, Ins. Services, Inc. v. Robertson*, 96 Cal.App.4th 884, 891 (2002) with *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1295 (2002)).

discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'" *Id.* (quoting *Nogart v. Upjohn Co.*, 21 Cal.4th 383, 398 (1999)).

The California Court of Appeal has held the discovery rule applies to UCL claims. In *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1295 (2002), the Court stated that the UCL four year statute of limitations "will probably run from the time a reasonable person would have discovered the basis for a claim."

Given the fact that Plaintiff's claim is based on a nondisclosure, and Plaintiff has alleged the relevant facts were not disclosed to them, this claim is not time barred. As set forth in the Complaint, Plaintiff alleges that MFS failed to disclose the compensation arrangement, *i.e.*, the extraordinary compensation paid by MFS to Bullock and SAI and paid by the Plan, and that MFS failed to disclose the financial relationships between these parties. (Compl. at ¶¶ 30, 81, 87, 94.) Because of the Defendants' concealment and/or failure to disclose facts that are the basis of Plaintiff's UCL claims, the earliest that Plaintiff could have reasonably discovered the factual basis supporting these claims was when the NASD announced that it was charging Bullock with violations of NASD rules because of this compensation arrangement, which took place in 2007. (Compl., ¶ 39.) At a minimum, Plaintiff could amend the Complaint to state when they learned the relevant facts, and that it occurred within the last four years. Accordingly, Plaintiff's UCL claims were asserted well within the four-year limitations period.

Even if the discovery rule does not apply, Plaintiff's claims are timely pursuant to the doctrine of equitable tolling by fraudulent concealment. *See Snapp & Associates Insurance Services, Inc. v. Malcom Bruce Burlingame Robertson*, 96 Cal.App.4th 884, 891 (2002) (holding that plaintiff's UCL claims would not be time barred if plaintiff could invoke the equitable tolling doctrine). Under that

/ / /

doctrine, the running of the statute of limitations is tolled "for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Sanchez v. South Hoover Hospital*, 18 Cal.3d 93, 99 (1976). The purpose of the doctrine is to "disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory." *Regents of University of California v. Superior Court*, 20 Cal.4th 509, 534 (1999).

As stated above, Plaintiff alleges that MFS concealed and/or failed to disclose the excessive compensation arrangement giving rise to Plaintiff's UCL claims. Because of MFS's concealment, Plaintiff was unable to assert its claims at the time the compensation arrangements were created or at the time this excessive compensation was paid. Further, because of MFS's concealment of its improper financial relationship with Bullock, Plaintiff was unaware of the facts giving rise to the UCL claims until the NASD's announcement of the Bullock investigation, which took place in 2007. (Compl., ¶ 39.)

In addition, the Complaint specifically alleges at Paragraph 50 a conspiracy between the Defendants to not disclose the material facts to Plaintiff. Based on such allegations, the statute of limitations does not begin to run on wrongful acts committed pursuant to a civil conspiracy until completion of the last overt act of that conspiracy. Therefore, the statute of limitations did not begin to run on Defendants' violations of the UCL until all the relevant facts were disclosed. Indeed, because the true facts have not been revealed and discovery has not yet commenced, the alleged conspiracy in terms of the scope of MFS's role in the controversy may be still ongoing. Thus, the UCL claim is not time barred and Plaintiff can go back to the inception of the wrongdoing in terms of obtaining full recovery on behalf of the Plan. *People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal.App.4th 102, 138 (2003); *Cf., Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 786 (1979).

12

### E.   <u>Plaintiff has Standing to Bring Its UCL Claims.</u>

Lastly, MFS argues that Plaintiff lacks standing to assert a UCL claim because, despite the direct allegations in Paragraphs 83, 90 and 96 of the Complaint that Plaintiff suffered such injury, Plaintiff fails to allege "injury in fact" and "loss money or property as a result of the unfair competition."  Specifically, MFS argues that Plaintiff has failed to allege that it paid an increased price for the mutual funds or that the mutual funds were inferior to other mutual funds.  However, Plaintiff alleges throughout the Complaint that it suffered loss of money or property as a result the excessive or extraordinary undisclosed compensation MFS directed to SAI and Bullock.

In *Hall v. Time Inc.*, 158 Cal.App.4th 847, 854-55 (2008), the California Court of Appeal recently summarized the various cases that have addressed what constitutes injury in fact or loss of money as a result of unfair competition for purposes of determining standing under the UCL, and found such losses fall into three general categories: (1) plaintiff expended money due to the defendant's acts of unfair competition; (2) plaintiff lost money or property; or (3) plaintiff has been denied money to which he or she has a cognizable claim.

Here, at a minimum Plaintiff falls into at least one, if not all three, categories. Specifically, Plaintiff alleged that this excessive or extraordinary compensation was paid from money invested in MFS funds, and therefore was paid by Plaintiff. *See* Compl. at ¶ 7 (alleging that Bullock "received payment for his services from Plan assets"), ¶ 17 (alleging that compensation "was paid from Plan assets" and that "fees were deducted directly from the accounts of Plan participants"); ¶ 32 (alleging that charges were "paid directly from money invested in MFS funds, and was therefore paid by the Plan participants and, therefore, from Plan assets").  Because of the excessive compensation that MFS paid out of the Plan assets, the value of those assets was diminished. *See Overstock.com, Inc.*, 151 Cal.App.4th at 716 (holding that plaintiff had standing to assert a Section 17200 claim based on the

13

1  allegation that defendants' actions resulted "in diminution in value of its assets").

2  And if MFS was unjustly enriched, Plaintiff has a cognizable interest in such

3  monies as a person with a superior right thereto.  Thus, while Plaintiff could further

4  clarify this standing issue if necessary, the Complaint as presently constituted

5  sufficiently alleges compliance with the UCL's standing requirements.

6          The case relied upon by MFS, *Animal Legal Defense Fund v. Mendes*, 160

7  Cal.App.4th 136 (2008), is distinguishable.  In finding that the plaintiffs lacked

8  standing because economic injury could not be inferred from the allegations, the

9  Court in that case noted that plaintiffs did not allege that the milk products at issue

10  were sold to them by the defendants or even produced by the defendants.  *Id.* at

11  146.  Here, Plaintiff alleges that it suffered actual economic loss as a result of an

12  illegal compensation scheme whereby MFS directed money from fund assets to

13  SAI and Bullock.  Thus, unlike the plaintiffs in *Animal Legal Defense*, Plaintiff

14  here has sufficiently alleged that it suffered actual economic injury.

15      **F.      The Court Should Grant Leave to Amend.**

16          A court may dismiss a complaint without granting leave to amend only if it

17  appears with certainty that the plaintiff cannot state a claim and any amendment

18  would be futile.  Leave to amend is to be granted with extreme liberality.  *See* Fed.

19  R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires");

20  *DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992);

21  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

22  1986).  MFS makes no showing that amendment would be futile.  Thus, leave to

23  amend should be granted unless the Court determines that the allegation of other

24  facts consistent with the challenged pleading could not possibly cure the deficiency.

25  Indeed, Section I of this Court's standing order states that such motions should be

26  avoided if the perceived defects could be corrected by amendment, citing *Chang v.*

27  *Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996).

28  / / /

As indicated in MFS's Notice of Motion, contrary to Local Court Rule 7-3, MFS's meet and confer efforts took place the day before the motion was filed. Several of the issues addressed here – for example, MFS's alleged role only as a "record keeper" under ERISA, its claims to dismiss the UCL claim on statute of limitations and standing grounds – were not raised in the course of those discussions.   Indeed, the primary point made by counsel for MFS was on the claimed statutory exemption under ERISA, which as detailed above does not come in to play when the Complaint is read in its totality. *See SEC v. Ritchie*, 2006 U.S. Dist. LEXIS 57258, *5 (C.D. Cal. Order August 14, 2006) (denying motion for failure to fully comply with rule).   Moreover, because there has been no opportunity for discovery, MFS's full role in the issues raised by this Complaint has yet to be ascertained, as that role necessarily involves discussions to which Plaintiff was not privy. All the Court needs to consider is the respective claims in these papers to see there is a vast divergence of opinion as to MFS's role.

Thus, Plaintiff has carefully evaluated MFS's contentions as to the Complaint's deficiencies, and has even raised the potential for deferring the resolution of such issues pending resolution of the arbitration issue.  However, MFS is insistent that the Court decide these issues now, even though as we have advised them (as stated herein), we believe many of MFS's arguments, even if accepted, are curable by amendment or should have the benefit of discovery based on the conduct alleged.

## V.  **CONCLUSION**

For the reasons detailed herein the Court should deny MFS's attempts to narrowly construe the allegations of the Complaint and to misconstrue MFS's role in the controversy.  Even if the Court believes any of MFS's assertions have merit,

/ / /

/ / /

/ / /

15

Plaintiff should be given leave to file an amended complaint that sets forth MFS's role in the controversy, to the extent such information is available.

DATED: October 3, 2008

Respectfully submitted,

ROSNER & MANSFIELD, LLP

By:   /S/  Alan M. Mansfield
        alan@rosnerandmansfield.com

WHATLEY DRAKE & KALLAS, LLC
Joe. R. Whatley, Jr.
jwhatley@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077

WHATLEY DRAKE & KALLAS, LLC
Glen M. Connor
gconnor@wdklaw.com
1000 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Tel: (205) 328-9576
Fax: (205) 328-9669

Attorneys for Plaintiff

1   WHATLEY DRAKE & KALLAS, LLC
    Joe R. Whatley, Esq.
2   jwhatley@wdklaw.com
    1540 Broadway, 37th Floor
3   New York, NY 10036
    Tel: (212) 447-7070
4   Fax: (212) 447-7077

5   ROSNER & MANSFIELD, LLP
    Alan M. Mansfield, Esq. (SBN: 125998)
6   alan@rosnerandmansfield.com
    10085 Carroll Canyon Road, Suite 100
7   San Diego, CA 92131
    Tel: (858) 348-1005
8   Fax: (858) 348-1150

9   Attorneys for Plaintiff

10  [Additional Counsel Appear on Signature Page]

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13  IATSE LOCAL 33 SECTION 401(k)        Case No.  CV 08-03949-AHM (SSx)
    PLAN BOARD OF TRUSTEES,
14                                        DECLARATION OF SERVICE

15            Plaintiff,
                                          Person(s) Served: Defendants
16        v.                              MICHAEL L. BULLOCK,
                                          individually and doing business
17  MICHAEL L. BULLOCK,                   as INNOVATIVE EMPLOYEE
    individually and doing business as    BENEFITS PROGRAMS;
18  INNOVATIVE EMPLOYEE                    SECURITIES AMERICA, INC.;
    BENEFITS PROGRAMS;                     and MASSACHUSETTS
19  SECURITIES AMERICA, INC.;             FINANCIAL SERVICES
    MASSACHUSETTS FINANCIAL              COMPANY
20  SERVICES COMPANY,
                                          Date Served:   October 3, 2008
21            Defendants.

22                                        Date:        October 27, 2008
                                          Time:        10:00 a.m.
23                                        Courtroom: 14

24

25        I, the undersigned, declare under penalty of perjury that I am employed with
    the law firm of ROSNER & MANSFIELD, LLP, whose address is 10085 Carroll
26  Canyon Road, Suite 100, San Diego, CA 92131.  I am over the age of eighteen
    years and not a party to this action; that I served the below named persons the
27  following documents:

28  / / /

                                    1

1
       **PLAINTIFF IATSE LOCAL 33 SECTION 401(k) PLAN BOARD**
       **OF TRUSTEES' MEMORANDUM OF POINTS AND AUTHORITIES**
2
       **IN OPPOSITION TO MOTION TO DISMISS FILED BY**
       **MASSACHUSETTS FINANCIAL SERVICES COMPANY**
3

4   [ ]    By personally delivering copies to the person served at the following address:

5   [ X ]  Via Court's electronic mail notice to the addressees listed below.

6      **SEE ATTACHED SERVICE LIST**

7

8   [ ]    By placing a copy in a separate envelope, with postage fully prepaid for each
       address named below and depositing each for collection and mailing pursuant
       to the ordinary business practice of this office, which mail is deposited with
9      the U.S. Postal Service on the same day at San Diego, California:

10     **SEE ATTACHED SERVICE LIST**

11   [ ]   By Overnight Mail by placing an Overnite Express Envelope/Federal
       Express Envelope addressed to each of the pesons on the service list attached
12     hereto and depositing said envelope in the Overnite Express/Federal Express
       Pickup Boxes located at Business Park Way and Carroll Canyon Road in San
13     Diego, California 92131

14
     Executed this   _____3RD_____ day of _____October_____, 2008 at San
15 Diego, California.

16

17                     _Sally Cormier_
                    SALLY CORMIER

18

19

20

21

22

23

24

25

26

27

28

                                2

1

## SERVICE LIST

2

WHATLEY DRAKE & KALLAS LLC
Joe R. Whatley, Esq.
jwhatley@wdklaw.com
1540 Broadway, 37ᵗʰ Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077

Attorneys for Plaintiff

WHATLEY DRAKE & KALLAS LLC
Glen M. Connor, Esq.
gconnor@wdklaw.com
1000 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
Tel: (205) 328-9576
Fax: (205) 328-9669

Attorneys for Plaintiff

3

4

5

6

7

BINGHAM McCUTCHEN LLP
Susan L. Hoffman, Esq.
Susan.hoffman@bingham.com
Karen J. Pazzani, Esq.
Karen.pazzani@bingham.com
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
Tel: (213) 680-6400
Fax: (213) 680-6499

Attorneys for Defendant Massachusetts
Financial Services Company

BINGHAM McCUTCHEN LLP
Frances S. Cohen, Esq.
Frances.cohen@bingham.com
Josephine Deang, Esq.
Josephine.deang@bingham.com
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8872
Fax: (617) 951-8736

Attorneys for Defendant Massachusetts
Financial Services Company

8

9

10

11

12

13

14

KEESAL YOUNG & LOGAN
Ben Suter, Esq.
Ben.suter@kyl.com
Garrett R. Wynne, Esq.
Garrett.wynne@kyl.com
450 Pacific Avenue
San Francisco, CA 94133
Tel: (415) 398-6000
Fax: (415) 981-0136
**(VIA Manual E-mail to Ben Suter)**

Attorneys for Defendants Michael L.
Bullock and Michael L. Bullock dba
Innovative Employee Benefits Program

FOLEY & LARDNER LLP
Dean M. Jeske, Esq.
djeske@foley.com
Thomas K. Anderson, Esq.
tanderson@foley.com
321 North Clark, Suite 2800
Chicago, IL 60654
Tel: (312) 832-4500
Fax: (312) 832-4700
**(VIA Manual E-mail)**

Attorneys for Defendant Securities
America, Inc.

15

16

17

18

19

20

21

FOLEY & LARDNER LLP
Lori V. Minassian, Esq.
lminassian@foley.com
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Tel: (213) 972-4500
Fax: (213) 486-0065

Attorneys for Defendant Securities
America, Inc.

22

23

24

25

26

27

28

3
